UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO. 02-30043-01** |
| **VERSUS** | * | **JUDGE JAMES** |
| **LEE DELL NATION, JR.** | * | **MAGISTRATE JUDGE HAYES** |

<u>REPORT AND RECOMMENDATION</u>

Before the Court is a Motion to Reinstate Filing of Motion to Vacate, Set Aside or Correct Sentence Under Title 18 U.S.C. Section 2255; and Request Equitable Tolling to the Limitations Period [Doc. No. 512] filed by Defendant Lee Dell Nation ("Nation"). The Government opposes the motion. [doc. # 357]. An evidentiary hearing was held in this matter on April 19, 2007. For reasons stated below, it is recommended that the motion be **GRANTED**.

BACKGROUND

Nation was prosecuted in the district court in the matter of *United States v. Nation, et al.*, No. 02-30043-01, and was represented by Charles Jones ("Jones"). He was sentenced to a term of imprisonment of 235 months pursuant to a judgment entered on February 2, 2004. [Doc. No. 345]. On March 22, 2005, while his appeal was pending, Nation, through Jones, filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255. [Doc. No. 447]. On June 15, 2005, the Court dismissed the motion without prejudice. [Doc. No. 455]. On July 6, 2005, the United States Court of Appeals for the Fifth Circuit issued an opinion in which it affirmed Nation's conviction and sentence. *United States v. Nation, et al.,* 138 Fed.Appx. 655 (5th Cir. 2005). No petition for writ of certiorari was filed within the 90 day period for filing certiorari ending on

October 4, 2005. No § 2255 motion was filed within a year of the date on which the conviction became final, October 4, 2006, as required by the statute.

On January 30, 2007, Nation filed a *pro se* motion to reinstate the filing of his motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. [Doc. No. 512]. Nation specifically requested equitable tolling of the limitations period for filing his § 2255 motion on the basis that his attorney, Jones, did not file a timely § 2255 motion on Nation's behalf as he had agreed to do and misrepresented to Nation and his family that the motion had been filed. *Id*. On February 20, 2007, Jones filed on behalf of Nation a motion to re-urge the motion to review his sentence pursuant to § 2255. [Doc. No. 519]. Jones alleged in the motion that "it was indicated to Nation that the motion would be filed in October of 2006. However, this motion was inadvertently not filed although it had been drafted." *Id*.

The evidence presented at the evidentiary hearing held in this matter was as follows:

Karla Jones Sims ("Sims"), Nation's niece, testified that she and other family members hired Jones to represent her uncle in the district court and on appeal. Tr. at p. 6. According to Sims, there was no written employment or retainer agreement. Tr. at p. 7. After the appeal, Jones informed her that he could file a 2255 motion. Tr. at p. 8. She became aware from her uncle of a filing deadline for the 2255 motion and the need for the family to "stay on top of it" and to make sure Jones met the deadline. As the deadline neared, Sims made several visits and phone calls to Jones's office. Tr. at p. 9. Sims's last visit with Mr. Jones was in September of 2006, at which time he told her that the 2255 had not been filed, but was typed up and ready for his review, at which time it would be filed. Tr. at p. 9. After the October deadline had passed, Sims spoke with Jones and his assistant, Jamar Smith ("Smith"), several more times, including by phone in February of 2007. Tr. at p. 10. They assured her that the 2255 had been filed. Tr. at

p. 10.  She asked for but never received a copy of the 2255.  Tr. at p. 11.  She testified that Jones told her in February 2007 that Nation had not received a copy because Jones had not had time to get the motion stamped and sent to him or to review it.  Tr. at p. 10-11.  She also testified that between the October 2006 deadline and February 2007, Smith told her that he could not release a copy of the motion without Jones' approval.  Tr. at p. 12.  Sims acknowledged that she did not attempt to obtain a copy from the courthouse.  Tr. at 12.

Elaine Nation, Mr. Nation's sister, testified that, at the request of her brother after his appeal was denied, she contacted Jones's office on several occasions.  Tr. at p. 15.  In those conversations, it was confirmed that a 2255 would be filed on Mr. Nation's behalf.  Tr. at p. 15.  At some point, Ms. Nation was told by Jamar Smith in Mr. Jones's office that a 2255 had been filed.  Tr. at pp. 15, 18.  Sometime after the beginning of October of 2006, Ms. Nation found out that no 2255 motion had been filed when she called the clerk of court's office at the request of her brother.  Tr. at p. 15.  Also, between November of 2005 and January of 2006,  Ms. Nation spoke with Jones, who told her that he had filed the 2255.  Tr. at pp. 15-16.

Carolyn Nute, Mr. Nation's sister, testified that she also had contact with Jones's office regarding the 2255, as her brother had requested that she make sure Jones filed the 2255.  Tr. at pp. 22-23.  Nute specifically recalled visiting with Jones the week of the filing deadline in October of 2006, at which time he told her that he had filed the papers.  Tr. at p. 23.  Nute believed Jones and had confidence in him.  Tr. at p. 23.  At that time, Jones did not offer to give her a copy of the 2255. Tr. at p. 23.  Nute met again with Jones after October of 2006, on February 5, 2007, at which time Jones showed her the papers and said he had filed them.  Tr. at p. 24.  He did not give her a copy despite her request because he said there were some typos and it was not yet ready.  Tr. at p. 25.  She, too, had confidence in Jones and believed him when he

3

said he had filed the papers.  Tr. at p. 28.

Stephanie Nute Morgan, Mr. Nation's niece, testified that she accompanied her mother, Carolyn Nute, to Jones's office in February of 2007, at which time he told them that the papers he was reading from had been filed at the end of 2006.  Tr. at pp. 30, 32.  Jones said at that time that he could not give them a copy of what he was reading to them.  Tr. at p. 31.

Mr. Lee Dell Nation, movant herein, testified that he never received any sort of written employment or fee agreement from Jones in connection with his representation of him in his criminal proceedings.  Tr. at pp. 33-34.  When Mr. Nation learned from his brother, a co-defendant, that his appeal had been denied, he contacted Jones's office for a copy of the appeal decision.  Tr. at pp. 36-37.  Thereafter, in October or November of 2005, Jones and Smith visited him at the jail in Yazoo City, at which time Mr. Nation asked about filing a 2255.  Tr. at p. 37.  Jones said that filing a 2255 would be better than filing with the United States Supreme Court and agreed to file the 2255.  Tr. at p. 37.

During 2006, Mr. Nation called Jones's office regularly to check on the 2255 and was told that they were working on it.  Tr. at p. 39.  As the deadline neared, he called even more regularly and was eventually told that the 2255 had been drawn up and filed.  Tr. at p. 39.  Mr. Nation spoke with Jones personally in around August of 2006, at which time he said they were getting the 2255 together and were going to file it and would get him a copy of the draft.  Tr. at p. 40.  Mr. Nation spoke with Jones again in September of 2006 or the first part of October, at which time he said that the 2255 had been filed and he was going to get the secretary to overnight a copy to Mr. Nation.  Tr. at p. 40.  Mr. Nation asked his family to call for a copy after that, and they were told it had been filed and that Jones had to go over it before a copy could be sent out to Mr. Nation.  Tr. at p. 41.  Mr. Nation never received any correspondence from Jones and never

received a copy of the 2255. Tr. at p. 43. After the deadline had passed and he still had not received a copy of the 2255, Mr. Nation asked his sister Elaine Nation to check with the clerk of court's office, at which time he learned that nothing had been filed. Tr. at pp. 44, 50. After learning this, Mr. Nation called Jones's office and was told by Smith that the 2255 had been filed but he could not send a copy until Jones had looked it over. Tr. at p. 44.

   Jones admitted that he agreed to file a 2255 motion for Mr. Nation and that he told some of Mr. Nation's family members that he had filed the 2255, although he did not recall telling them that he would send them a copy. Tr. at pp. 52-53. Jones also admitted to talking to Mr. Nation on occasions between the time he visited with him at Yazoo City in 2005 and the filing deadline of October 2006. Tr. at p. 53. He testified that he did not learn that the 2255 had not been filed until he received a copy of the motion filed by Mr. Nation (which was filed on January 30, 2007). Tr. at p. 54. Jones identified from his client file a draft 2255 motion with a blank service date in October of 2006 that was never filed. Tr. at pp. 56-57; Joint Exhibit A at 0006-0009. When the family met with him in February of 2007, the week prior to his receiving Mr. Nation's motion, Jones looked in the file and saw that the draft was not stamped filed or signed. Tr. at pp. 57, 69. According to Jones, this document had been drafted by his paralegal and put in the client file, but not filed in court. Tr. at p. 57.

   Jones admitted that Mr. Nation and his family were diligent in their efforts to ensure that he timely filed a 2255 motion on Mr. Nation's behalf. Tr. at p. 60. Jones also admitted that he personally told Mr. Nation that he would file the 2255. Tr. at p. 62. Jones acknowledged that he did not give Mr. Nation any reason to doubt his representations in this regard. Tr. at p. 62. Jones also admitted that, at some point near the filing deadline, he told Mr. Nation that the 2255 had been filed, and did not give Mr. Nation any reason to doubt his word in this regard and that

5

Mr. Nation reasonably relied on this representation. Tr. at p. 64. Also, according to Jones, when he told Mr. Nation and his family prior to the October 2006 deadline that the 2255 had been filed, he had not looked at the file to confirm this or to see whether it contained a stamped filed copy. Tr. at p. 70. Instead, Jones claimed that he made the representations based upon the circumstance that he had his paralegal draft a 2255 motion and directed him to file it. Tr. at p. 70. Also, Jones testified that Smith told him it had been filed, although Jones did not remember signing the document and did nothing to confirm this. Tr. at p. 71. It was Jones intent "at some point" to get a stamped copy and send it to Mr. Nation, but he never did so. Tr. at pp. 71-72.

Jones admitted that, while insisting it was not his intent to purposefully deceive, Mr. Nation was "obviously misled erroneously, by mistake," and "relied upon the representation," which was "all he could do." Tr. at p. 76. Jones also admitted that he told Mr. Nation that the 2255 had been filed without checking the file to ensure that there was a stamped filed copy in it. Tr. at p. 77. Jones testified that he filed a motion to re-urge the 2255 motion in February of 2007 in order to help Mr. Nation given the fact that he had relied upon the representations that Jones's office had made to him. Tr. at p. 80.

Smith testified that he drafted a 2255 the week after he and Jones returned from visiting with Mr. Nation in Yazoo City. Tr. at p. 86. Thereafter, Smith sent the motion to be signed by Jones. Tr. at p. 87. Based on this, Smith thought the motion had been filed and represented to Nation that it had been filed because he drafted it himself. Tr. at pp. 87-89. Also, when Mr. Nation called one time and said it was getting close to the prescription date, Smith looked in the file and saw a highlighted copy and assumed it had been filed by Eddie Getret ("Getret"), an employee of Jones who serves as an investigator and files documents. Tr. at pp. 87, 89. Smith testified that a highlighted copy in the file indicated to him that a motion had been filed because

filed motions were usually highlighted before being placed back in the client's file. He also testified that it was not unusual for him to see a highlighted copy without a stamp from the clerk's office. Tr. at p. 95.

When Mr. Nation asked for a copy of the supposedly filed 2255, Smith said he would send it out as soon as Jones gave him the authorization. Tr. at p. 89. When Smith told Jones that Mr. Nation had requested a copy of the 2255, Jones said that he wanted to look at it before they mailed him a copy. Tr. at p. 94. Still, it was not until after the February 2007 visit by Mr. Nation's family that Jones actually looked in the file for a stamped copy of the 2255 motion. Tr. at pp. 88, 91. Smith did not look at the client file to see if there was a stamped filed copy prior to the passing of the filing deadline, Tr. at pp. 91-92, nor did he speak with Getret or look on the court docket sheet to confirm that the 2255 had been filed. Tr. at pp. 95-96. Smith did, however, testify that he never intentionally lied to Nation about the motion having been filed. Tr. at p. 88. According to Getret, he did not recall being asked to file anything in the case and further claimed that, since Smith began working in the office, it was Smith who did most of the filing. Tr. at p. 101. Also, Getret denied highlighting the draft document in the file. Tr. at pp. 102-103.

## LAW AND ANALYSIS

Equitable tolling preserves a petitioner's claims when strict application of the statute of limitations would be inequitable. *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998) (citation omitted). However, equitable tolling is justified only in "rare and exceptional circumstances," and the burden of proof is upon the petitioner. *U.S. v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000). "[M]ere attorney error or neglect is not an extraordinary circumstance such that equitable tolling is justified." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002). A petitioner's ignorance or mistake is likewise insufficient. *Id*.

7

(citation omitted). Moreover, the petitioner must diligently pursue his habeas relief. *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999).

An attorney's intentional deceit may warrant equitable tolling, provided that the petitioner reasonably relied on his attorney's deceptive misrepresentations. *Riggs, supra* (citing *U.S. v. Wynn*, 292 F.3d 226, 230-231 (5th Cir. 2002). However, an attorney's representation to the petitioner that he would prospectively act on his behalf does not suffice. *Schlueter v. Varner*, 384 F.3d 69 (3d Cir. 2004); *Bailey v. Dretke*, 2006 WL 355233 (S.D. Tex. 2/13/06); *Garza v. Dretke*, 2004 WL 2385002 (W.D. Tex. 10/25/04); and *Romine v. Dretke*, 2004 WL 893799 (N.D. Tex. 4/26/04).

The undersigned finds that Nation is entitled to equitable tolling on the basis that his attorney did not merely commit "mere negligence" or "attorney error" in not filing his § 2255 petition by the one-year deadline of October 4, 2006, but rather intentionally and repeatedly misrepresented that the petition had been filed without making any effort to confirm the accuracy of these representations by simply looking at the court docket or examining the client file for a stamped filed copy, and Mr. Nation, who was diligent in the pursuant of his rights under 2255, reasonably relied on these misrepresentations.

Prior to the October 2006 filing deadline, Mr. Nation, as well as his family members, repeatedly contacted Mr. Jones's office in order to determine if a Section 2255 motion would be or had been filed as promised. They were repeatedly assured by Mr. Jones and his office that such a motion would be and, ultimately, had been filed. By his own admission, Mr. Jones and his office repeatedly assured Mr. Nation and his family that a 2255 motion had been timely filed even though he did not recall signing it and did not review the court docket or the client file to ensure that a stamped filed copy was in it.

8

In *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002), the Fifth Circuit held that the petitioner's allegation that he was deceived by his attorney into believing that a timely § 2255 motion had been filed on his behalf presents a rare and extraordinary circumstance beyond the petitioner's control that warrants equitable tolling if the petitioner reasonably relied on the attorney's misrepresentation. The Government argues that the facts in the case at bar are distinguishable from those in *Wynn* because there is no indication that Jones or Smith intentionally lied when they told Nation that the motion had been filed. It is for this reason that the Government argues that *United States v. Riggs*, 314 F3d 796 (5th Cir. 2003), *cert. denied*, 539 U.S. 952 (2003), in which the defendant sought equitable tolling based on his attorney's misinformation as to the expiration of the limitations period, is controlling in this case. The Fifth Circuit held that Riggs was not entitled to equitable tolling based on the lack of evidence in the record of any intentional deceit on the part of the attorney and the fact that Riggs allegations amounted to nothing more than mere attorney error. *Id.* at 799-800.

However, in the case at bar, the repeated misrepresentations of Mr. Jones and his office that a 2255 motion had been filed, despite the failure of anyone in the office even simply to check the file to ensure that there was a stamped filed copy given the gravity of the deadline, goes well beyond "mere attorney error." While Jones and Smith may not have knowingly lied to Nation about the status of his 2255 motion, they did intentionally tell Nation numerous times that the motion had been filed without making any effort whatsoever to confirm the veracity of their statements. At some point deliberate inaction rises to the level of intention, and the undersigned finds that it did so in this case. Accordingly, the undersigned finds that Nation has demonstrated facts sufficient to find that his attorney intentionally deceived him regarding filing of his § 2255 motion.

The undersigned also finds that Nation reasonably relied on the representations of Jones and Smith, and that he exercised due diligence in his pursuit of § 2255 relief.  Jones admitted that Nation reasonably relied upon his and his office's representations that the § 2255 motion had been timely filed, and the undersigned agrees.  There is no evidence in the record indicating that Jones had misled or failed Nation in the past or of any circumstances that would render Nation's reliance upon Jones unreasonable.  Moreover, Nation could not have acted any more diligently in order to ensure that the promised 2255 was filed timely.  Following his conviction, Nation and numerous members of his family repeatedly contacted Jones in an attempt to ensure that a 2255 motion had been filed on his behalf, and they were told time and time again that the motion either was about to be filed or had been filed.  Moreover, it was only when Nation had a family member check with the clerk of court's office after he had not received a copy of the motion that Nation learned no such motion had been filed.  He then diligently prepared and filed his own *pro se* Section 2255 motion as soon as possible thereafter.  As Nation testified, had he not been assured by Jones and his office that the 2255 motion had been timely filed, he would have prepared and filed a motion on his own prior to the filing deadline.

The Government contends that Nation should have checked with the Court prior to the filing deadline on account of the fact that he and his family members did not receive the copies of the motion that they requested from Jones' office.  However, more than once, Nation and his family members were given reasons why they had not received a copy of the motion.  For example, Sims testified that in February 2007, which was after the October 2006 deadline, Jones assured her that the motion had been filed and that the reason she had not received a copy was because he had not had time to review it or get it stamped and sent to him.  Tr. at p. 10-11.  Sims also testified that, between the October 2006 deadline and February 2007, she spoke to Smith,

who told her that the motion had been filed but that he could not release a copy of the motion without Jones' approval.  Finally, Carolyn Nute, Nation's sister, testified that she was told by Jones on February 5, 2007, that the motion had been filed but that it was not ready for them to receive a copy at that time.  Given these explanations, the failure to receive the requested copies was not sufficient on its own to put Nation and his family members on notice that motion had not been filed.

Under the circumstances of this case, the repeated assurances by Jones and his office to Nation and his family that a 2255 motion would be and was timely filed, made in response to numerous telephone calls and family visits prior to the filing deadline, constitute an extraordinary circumstance that stood in the way of Nation's timely filing of a 2255 motion despite his diligent pursuit of his rights.  The repeated misrepresentations of Jones and his office in response to numerous and persistent inquiries about the status of the 2255 motion prior to the filing deadline – without anyone even once checking the client file for a stamped filed copy or the court docket to ensure that the motion had indeed been timely filed -- constitute more than "mere attorney negligence" or "excusable neglect" and rise to the level of misconduct well beyond Nation's control and warrant equitable tolling.[1]

For the above-stated reasons, it is recommended that defendant's Motion to Reinstate Filing of Motion to Vacate, Set Aside or Correct Sentence Under Title 18 U.S.C. Section 2255 and Request for Equitable Tolling to the Limitations Period [Doc. No. 512]  be **GRANTED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and F.R.C.P. Rule 72(b), the parties

---

[1] The Government also argues that equitable tolling is not warranted in this case because Nation's § 2255 motion is without merit on account of the fact that Booker is not applicable to cases on collateral review.  However, the Government cites no Fifth Circuit authority supporting the proposition that a Court should deny equitable tolling if the petitioner's motion lacks merit.

11

have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

**THUS DONE AND SIGNED** at Monroe, Louisiana, this 19th day of June, 2007.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE