**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 02-30043-01** |
| **VERSUS** | * | **JUDGE JAMES** |
| **LEE DELL NATION, JR.** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Motion to Vacate, Set Aside, or Reduce Sentence filed by defendant LEE DELL NATION, JR.

("Nation") (Document Nos. 447, 512, 519, 532, 565). The Government filed an opposition to the

motion (Document Nos. 518, 571), and evidentiary hearings were held on April 19, 2007, and

May 5, 2008. For reasons stated below, it is recommended that the motion be **DENIED**.

## BACKGROUND

On November 21, 2002, a federal grand jury returned a thirty-one count indictment

against Nation and nine other individuals. Count One of the indictment charged Nation and the

other individuals with conspiracy to distribute fifty grams or more of a mixture or substance

containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Count Two charged Nation with knowingly and intentionally distributing five grams or more of a

mixture or substance containing cocaine base, otherwise known as crack, a Schedule II controlled

substance, on April 19, 2002, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Counts

Three through Five alleged that Nation knowingly and intentionally distributed five or more

grams of a substance containing cocaine base on May 7, 2002, August 13, 2002, and September

17, 2002, respectively, and County Thirty-One was a forfeiture count.

On August 19, 2003, Nation pleaded guilty to knowingly and intentionally conspiring to

possess with the intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 846(a)(1) and 846.[1]  He also pleaded guilty to a forfeiture count.  On January 30, 2005, Nation was sentenced to 235 months imprisonment followed by four years of supervised release.

On March 11, 2005, Nation filed a Motion to Review, Modify, and Reduce Sentence pursuant to 28 U.S.C. § 2255;[2] however, because it was filed while Nation's appeal to the Fifth Circuit was still pending, the motion was dismissed without prejudice on June 14, 2005.  The United States Court of Appeals for the Fifth Circuit affirmed Nation's conviction and sentence on July 29, 2005.  On January 30, 2007, Nation filed a *pro se* motion to reinstate his 2255 motion which, because the time period for filing a 2255 motion had expired, requested equitable tolling of the limitations period.  Nation's prior attorney then filed a motion to re-urge his earlier filed 2255 motion. After counsel was appointed to represent Nation, an evidentiary hearing was held regarding Nation's motion for equitable tolling.  Following the hearing, the undersigned recommended that Nation's motion for equitable tolling be granted.  This recommendation was adopted on July 18, 2007, and Nation's §2255 motion was reinstated.  Nation then filed an amended §2255 motion which preserved his original claims and added additional ones.

Nation argues the following grounds for relief:  (1) his counsel was ineffective in conducting little or no pre-trial investigation or preparations; (2)  his current sentence is unconstitutional under *United States v. Booker* because his sentence was enhanced, under a

---

[1] The bill of information states that this occurred from sometime in 2001 through November 20, 2002.

[2] The motion argued that the facts supporting the organizer/leader and gun enhancements to Nation's sentence were neither admitted by Nation nor proved to a jury beyond a reasonable doubt and that such was a violation of Nation's constitutional rights in accordance with *United States v. Booker*; the motion also argued that Nation demonstrated an acceptance of responsibility and therefore was entitled to a reduction of his base offense level by two points.

mandatory guidelines scheme, based on facts neither admitted by him nor found by a jury and his counsel was ineffective in failing to object to such enhancements at sentencing in order to preserve the issue for appeal; (3) his counsel was ineffective in failing to advise him of the sentencing range that he was facing and, therefore, his guilty plea was involuntary; (4) the evidence was insufficient to demonstrate that he was a leader and/or organizer; and (5) the federal sentencing guidelines with regard to crack cocaine are unconstitutional as applied to him due to their disparate impact on minorities.

## LAW AND ANALYSIS

The Law of § 2255 Actions

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack". 28 U.S.C. §2255; *United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992), *cert. den.*, 504 U.S. 962 (1992). The scope of relief under §2255 is consistent with that of the writ of habeas corpus. *Cates*, 952 F.2d at 151; *see also United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Only cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

In *United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992), the United States Court of

3

Appeals for the Fifth Circuit stated as follows:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *U.S. v. Capua*, 656 F.2d. 1033, 1037 (5th Cir. 1981). Non-constitutional claims that could have been raised on direct appeal but were not may not be asserted in a collateral proceeding.

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 102 S.Ct. 1592-93 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 112 S.Ct. 978 (1992). Thus, even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (*citing Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *en banc, cert. denied*, 112 S.Ct. 978 (1992)); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). Of course, issues raised and disposed of on direct appeal are not subject to further review under section 2255. *See Segler*, 37 F.3d at 1134.

Even if a defendant cannot establish "cause" and "prejudice," pursuant to a narrow exception, a defendant may be entitled to relief under 28 U.S.C. § 2255 if the error of a constitutional nature would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-6 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime

of which he is innocent. *Shaid*, 937 F.2d at 232. Without a "colorable showing of factual innocence," the defendant fails to show a fundamental miscarriage of justice. *United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993); *McCleskey v. Zant*, 499 U.S. 467, 495 (1991).

**I. Was Nation's counsel ineffective in failing to conduct any substantial pre-trial investigation or preparations.**

Ineffective Assistance of Counsel

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F. 3d 585, 589 (5th Cir. 1996); *United States v. Gipson*, 985 F. 2d 212 (5th Cir. 1993); *United States v. Navejar*, 963 F. 2d 733, 735 (5th Cir. 1992). However, not all ineffective assistance of counsel claims are cognizable for the first time on collateral attack absent proof of "manifest injustice." Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. To prevail on a claim of ineffective assistance of counsel, a defendant must show both that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington,* 466 U.S. 668 (1984).

If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). Furthermore, the parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). In addition, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first part of the *Strickland* test, a court should presume that the attorney's

5

actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *Strickland* at 689-690. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the defendant must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F. 2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *See also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995). Accordingly, counsel cannot be ineffective for failing to raise a meritless claim. *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995). In order to demonstrate ineffective assistance of counsel in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have ple[d] guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Nation contends that his guilty plea was unknowing and involuntary due to his counsel's ineffective assistance and asserts numerous examples of his counsel's ineffectiveness. The undersigned notes initially that Nation adduced no facts or evidence at the evidentiary hearing held in this matter supporting any of his counsel's alleged deficiencies. Nation first argues that his counsel was ineffective in failing to conduct any substantial pre-trial investigation or preparations. However, although Nation makes numerous general and conclusory allegations that his attorney stated that he would be available to represent him but was not due to his responsibilities as a state senator, Nation refers to no specific example of how his counsel's pre-

trial investigation or preparation was deficient.  He has not demonstrated what information or evidence an investigation would have revealed, nor has he demonstrated how such information or evidence, or better preparation on the part of his counsel, would have affected his decision to plead guilty or his sentencing.  Nation states that a period of six to eight months passed after counsel's initial visit with him and that he was detained for thirteen months, during which his attorney spend no more than four hours with him in preparation for trial; however, the Fifth Circuit has stated that "brevity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).  Nation has not demonstrated that his counsel's preparation or pre-trial investigation was deficient or that he was prejudiced by any such deficiency.

Nation states that his counsel did not file any pre-trial motions despite Nation's request that certain motions be filed; in his affidavit attached to his motion, Nation states that he asked his attorney to file a motion for summary judgment, a speedy trial motion, and a motion for a discovery hearing.  However, as this was a criminal trial and not a civil action, there was clearly no mechanism by which Nation's counsel could have filed a summary judgment motion.  With regard to a speedy trial motion, the record in this case reveals that Nation signed a waiver of his right to a speedy trial, and Nation has not demonstrated that this waiver was not knowing and voluntarily made.[3]  Finally, as to Nation's claim that his attorney failed to file a motion for a discovery hearing, Nation has not identified any information that could or should have been discovered nor how such information would have affected his decision to plead guilty.

---

[3] Nation states the general allegation that waivers obtained through his guilty plea were not knowing and voluntary due to his counsel's ineffective assistance, but he makes no contention that his counsel did not inform him that he was waiving his right to a speedy trial or that he was unaware of what he was doing.  Moreover, Nation adduced no facts or evidence regarding this claim at the evidentiary hearing held in this matter.

Moreover, the record reveals that numerous discovery motions were filed on behalf of Nation,[4] and at the evidentiary hearing held in this matter, Nation's attorney testified that there was an "open file" policy in this case with regard to discovery. Therefore, Nation has not demonstrated any deficiency in his attorney's performance, or any resulting prejudice, with regard to discovery.

Nation next contends that he had a constitutional right to trial by jury whereby he could present witnesses and evidence and offer testimony on his own behalf. Nation then states that his attorney did not call his co-defendants to testify at his sentencing hearing and that his attorney denied him the right to testify on his own behalf at such hearing. To the extent that Nation's claim implicates his right to a trial by jury, in pleading guilty, Nation signed an affidavit of understanding acknowledging that he understood his right to a jury trial and to have witnesses testify on his behalf and stating that he waived such rights. Moreover, at his guilty plea hearing, Nation again acknowledged that, in pleading guilty, he was forgoing his right to a jury trial and to present evidence and witnesses on his behalf. "Solemn declarations in open court carry a strong presumption of verity," and the "representations of the defendant, his lawyer, and the prosecutor at a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Aside from his generalized argument that his waivers were involuntary due to ineffective assistance of counsel, Nation does not contend, nor does he allude to any facts or

---

[4] These motions included a motion for production of any documentary material or other evidence to be used at trial, a motion for production of a list of government witnesses, a motion for discovery and inspection, and a motion for production of exculpatory evidence and for disclosure of impeaching evidence. (See Document Nos. 109,110,115,116). The undersigned notes that these motions were filed by the attorney who represented Nation prior to the attorney that is the subject of this §2255 motion, but they were filed after the latter attorney enrolled as Nation's counsel. The record reveals that the motion for production of evidence to be used at trial and the motion for production of a list of government witnesses were granted by the undersigned.

evidence supporting such a contention, that he was unaware that in pleading guilty he was waiving his right to a jury trial. Thus, Nation has not demonstrated that he did not knowingly and voluntarily waive his right to a jury trial.[5]

As to Nation's claim regarding his attorney's failure to call his co-defendants to testify at his sentencing hearing and denial of his right to testify at the hearing, even assuming *arguendo* that Nation's counsel was ineffective in this regard, Nation has not demonstrated that he was prejudiced by such deficiency. He has not alluded to what he or his co-defendants would have testified to nor how such information would have affected the outcome of his sentencing. *See Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) (analyzing petitioner's claim that his counsel interfered with his right to testify and failed to call favorable witnesses under *Strickland* and concluding that petitioner had failed to demonstrate prejudice because he had not identified what his or his witnesses's testimony would have been had he or they been called to testify).

Nation also contends that he asked his attorney to schedule a bond hearing because he was a first time offender and that his attorney told him that he would do so, but he never did. This argument, however, is not a challenge to Nation's conviction or sentence and, therefore, is not cognizable in a §2255 motion. *See U.S. v. Daly*, 1999 WL 138895, *1 (E.D.La. March 11, 1999) (finding that the court did not have jurisdiction under §2255 to consider petitioner's claim that her counsel was ineffective in failing to obtain information that could have been relevant in

---

[5] He states that in the days leading up to his trial, he and his attorney discussed the direction of the trial, but that his attorney came to him at the last minute and told him that he did not have the time to represent Nation due to his responsibilities as a state senator and asked him to plead guilty. However, it is common for defendants to arrive at the decision to plead guilty immediately preceding or close to the time of trial; that fact alone does not indicate that Nation did not understand that he was waiving his right to a jury trial or that his plea was involuntary. Moreover, again, Nation adduced no testimony or other evidence regarding this claim at the evidentiary hearing held in this matter.

her pre-trial detention/bond hearing).

With regard to the above claims, Nation has not demonstrated ineffective assistance of counsel sufficient to render his guilty plea involuntary. Therefore, it is recommended that Nation's §2255 motion on such grounds be DENIED.[6]

**II. Is Nation's sentence unconstitutional under *United States v. Booker* due to the fact that it was enhanced, under a mandatory guidelines scheme, based on facts neither admitted by him nor found by a jury, and was Nation's counsel ineffective in failing to object to such enhancements and thereby preserve the issue for appellate review?**

Nation contends that his sentence is unconstitutional in accordance with *United States v. Booker*, 543 U.S. 220, 244 (2005), in which the Supreme Court held that, when operating under a mandatory sentencing guidelines system, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." It is uncontested in this case that Nation's sentence was enhanced under a mandatory guidelines system based on facts that he did not admit and that were not proved to a jury beyond a reasonable doubt. Nation plead guilty to conspiracy to possess with the intent to distribute five grams or more of cocaine base. According to Nation, his base offense level based

---

[6] Nation further states his attorney acted in bad faith in "shaming" him out of thousands of dollars. He states that he paid his attorney an additional $5,000 for a direct appeal that his attorney told him only he could file; however, when he received a copy of the appeal, another attorney's name was listed in addition to his attorney's name; to the extent that this is intended to be the basis of a claim for ineffective assistance of counsel, it does not challenge Nation's conviction or sentence and, therefore, is not cognizable under §2255. Therefore, it is recommended that Nation's motion on this ground be DENIED. Nation also makes numerous complaints regarding his attorney's failure to file a §2255 motion. However, as Nation was granted equitable tolling and the opportunity to file his §2255 motion, he was not prejudiced by his attorney's failure in this regard and it is recommended that his motion on this ground be DENIED.

on his plea should have been 26, which applies when at least five grams but less than 20 grams of cocaine base are at issue. USSG §2D1.1(c) (2003). However, Nation's pre-sentence investigation report, which was ultimately adopted at sentencing, stated that Nation's base offense level was 34. This was based on the finding that Nation was responsible for at least 194.68 grams of cocaine base. Nation's sentence was also enhanced four points based on the finding that he was an organizer and/or leader and two points based on the fact that he had a dangerous weapon in his possession. These enhancements resulted in an adjusted offense level of 38[7] which, combined with Nation's criminal history category of I, resulted in Nation's being subject to a sentencing range of 235 to 293 months.

There is nothing in Nation's guilty plea or plea agreement from which it may be concluded that Nation admitted that he conspired to possess with the intent to distribute 194.68 grams of cocaine base, nor did he admit to any facts supporting the dangerous weapon enhancement; therefore, as these facts were neither admitted by Nation nor proved to a jury beyond a reasonable doubt, the fact that Nation's sentence was enhanced based on these facts under a mandatory guidelines scheme ran afoul of *Booker*.[8] Nation argued on appeal to the Fifth

---

[7] Two points were deducted based on Nation's acceptance of responsibility.

[8] According to the pre-sentence investigation report, the 194.68-gram amount included eight separate drug sales in the amounts of 8, 7.49, 35.65, 32.32, 3.51, 3.94, 10.5, and 9.27 grams of cocaine, respectively, in addition to 84 grams of cocaine which were found Nation's truck. The undersigned notes that, despite Nation's contention that his base offense level should have been 26 based on the charge to which he pled guilty, Agent Harry B. Deal testified at Nation's guilty plea hearing that a cooperating witness purchased cocaine from Nation on four different occasions in the amount of 8 grams, 7.49 grams, 35.65 grams, and 32.32 grams, respectively. Following Deal's testimony, Nation was asked whether he had any disagreement with anything contained in the factual basis, to which he responded that he did not. Therefore, assuming Nation's statement could be deemed an admission, *Booker* would not prohibit Nation from being sentenced based on conduct totaling 83.34 grams of cocaine. Regardless, there was no testimony at the guilty plea supporting

Circuit that his sentence violated *Booker*.[9]  The Fifth Circuit, however, reviewed Nation's *Booker*

claim only for plain error due to the fact that Nation did not object on *Booker* grounds in the

district court and, therefore, did not preserve the issue for appeal.  The Fifth Circuit concluded

that Nation could not satisfy the third prong of the plain error test,[10] which requires that the error

"must have affected the outcome of the district court proceedings," *United States v. Mares*, 402

F.3d 511, 521 (5th Cir. 2005), because the record did not indicate that the district court would

---

194.68 grams of cocaine being attributed to Nation.

We also note that Deal testified that Nation, along with two other individuals, was responsible for distributing the cocaine to other members of the family so that they could distribute it.  Again, Nation stated that he did not disagree with anything contained in the factual basis; however, Nation did file an objection to the pre-sentence investigation report based on the claim that the relevant facts and/or testimony did not substantially reveal that he was an organizer and/or leader in the conspiracy.  The undersigned need not decide whether Nation admitted sufficient facts to support the organizer/leader enhancement because it is clear that Nations's sentence was enhanced based on judge found facts under a mandatory guidelines scheme with regard to the amount of drugs and the weapon.

[9] In actuality, Nation argued that his sentence was unconstitutional pursuant to *Blakely v Washington*, 542 U.S. 296 (2004), which was decided prior to *Booker*.  The *Blakely* Court considered enhancements based on judge-found facts in the context of the state of Washington's statutory sentencing guidelines and found that facts neither admitted by the defendant nor proved to a jury could be used to enhance a defendant's sentence beyond the sentencing range supported by facts either admitted by him or her or proved to a jury.  *Id.* at 304-05.  Because it was decided while Nation's case was pending on appeal, the Fifth Circuit applied *Booker*, which extended the holding in *Blakely* to the federal sentencing guidelines, to Nation's case.

[10] When reviewing a *Booker* claim for plain error, the Fifth Circuit will "correct the sentencing determination only if (1) there is error (and in light of *Booker*, an 'unreasonable' sentence equates to finding of error); (2) it is plain; and (3) it affects substantial rights." *United States v. Peltier*, 505 F.3d 389, 392 (5th Cir. 2007) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).  If Nation had preserved the issue for appeal, the harmless error standard of review would presumably have applied.  *United States v. Cordero*, 465 F.3d 626, 632 (5th Cir. 2006).  Under that standard, assuming *Booker* error were found, the Government would have had to demonstrate "beyond a reasonable doubt that the error did not contribute to the sentence imposed." *Id.* (citation omitted).

have given Nation a lower sentence had it been operating under an advisory rather than mandatory sentencing guidelines scheme.[11]  Therefore, as Nation's substantive *Booker* claim was raised and rejected on direct appeal, it is not subject to further review under §2255.  *Segler*, 37 F.3d at 1134.  Although it is somewhat unclear, it appears that Nation is asking this Court to be the first to hold that *Booker* should be retroactively applied to cases on collateral review.  It is clear, however, from the Fifth Circuit's opinion, that the court applied the principles set forth in *Booker* to Nation's claims in accordance with the Supreme Court's holding that *Booker* was to be applied to all cases pending on direct review.  *Booker*, 543 U.S. at 268.  Therefore, there is simply no need under the current facts for this Court to even consider holding that *Booker* is retroactive to cases on collateral review, nor would the undersigned recommend such a holding even if the circumstances were appropriate.  Moreover, to the extent that Nation is asking this Court to hold that even though Nation's counsel failed to object on *Booker* grounds and preserve the issue for appeal, his sentence is nonetheless unconstitutional under *Booker* and, therefore, he is entitled to be re-sentenced, the undersigned recommends that this claim be DENIED.[12]

---

[11]   In so holding, the Fifth Circuit impliedly found that there was a *Booker* error and that it was plain.

[12]   In *Booker*, the Supreme Court expressly stated as follows after holding that *Booker* was to be applied to cases pending on direct review:

> That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test. It is also because, in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for reasonableness may depend upon application of the harmless-error doctrine.

Nation next argues that his counsel was ineffective for failing to challenge his sentence on *Booker* grounds in the district court in order to preserve the issue for appeal. Nation contends that if his attorney had so objected, the Fifth Circuit would not have limited its review of his *Booker* claim to plain error and would have remanded Nation's case for re-sentencing.

Nation concedes that neither *Blakely* nor *Booker* had been decided at the time he was sentenced; rather, only *Apprendi v. New Jersey*, 530 U.S. 466 (2000), had been decided. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. *Blakely*, which extended the holding in *Apprendi* to Washington's statutory sentencing guidelines, was decided on June 24, 2004, approximately five months after Nation was sentenced, and *Booker*, which extended the holding in *Blakely* to the federal sentencing guidelines, was decided on January 12, 2005, approximately one year after Nation was sentenced. However, Nation argues that a competent attorney would have been "cognizant of possible extensions of *Apprendi*, especially in light of the grant of certiorari review in *Blakely*, to challenge the federal Sentencing Guidelines and of the necessity of preserving those challenges in case the Supreme Court struck down the Guidelines while [Nation's] case was pending on direct appeal, which is exactly what happened in this case."

As support for this argument, Nation relies on *United States v. Nichols*, 501 F.3d 542 (6th Cir. 2007), in which the Sixth Circuit Court of Appeals, faced with a claim similar to the one at bar, held as follows:

---

*Id.*

With the future state of the law so uncertain post-*Apprendi*, we believe that any counsel whose performance satisfied an 'objective standard of reasonableness' . . . would have at least been cognizant of possible extensions of *Apprendi* to challenge the Federal Sentencing Guidelines and the necessity of preserving those challenges in case the Supreme Court struck down the Guidelines while the defendant's case was pending on direct appeal."  The addition of multiple enhancements to Nichols's Guidelines range, including at least two-vulnerability of a victim and use of a child in the course of the offense-indisputably based purely on judge-found facts, provided the ideal circumstances for one such challenge.  Additionally, Nichols's counsel did challenge Nichols's Guidelines range on other grounds, including a request for a downward departure.  Under these circumstances, we conclude that counsel performed deficiently by failing to raise an additional Sixth Amendment challenge to the increases in Nichols's Guidelines range.

*Id.* at 546.  However, the decision in *Nichols* has since been vacated and rehearing has been granted.  Moreover, not only is *Nichols* not binding on this Court, numerous courts within the Fifth Circuit have rejected claims analogous to Nation's.  In *United States v. Garza*, 2008 WL 447495 (S.D.Tex. February 19, 2008), the court rejected the petitioner's argument that his counsel was defective for failing to object to the enhancements to his sentence based on *Apprendi* and in anticipation of *Blakely* and *Booker*, neither of which had been decided yet.[13]  *Id.* at *6.

The court stated as follows:

Even if it [*Nichols*] were still a valid opinion, moreover, the Court is not bound by that case. Instead, the Court finds that Garza's attorney was not deficient for failing to predict the *Blakely* and *Booker* decisions and raise an argument based on them. . . .  Garza's claim is infirm, as well, because he cannot show prejudice. Clearly established Fifth Circuit law at the time of his sentencing showed that Garza was not entitled to relief under *Apprendi*. Thus, even if his counsel had argued that the increase for a leadership role or for obstruction violated *Apprendi*, he cannot show that the outcome of sentencing would have been different. Specifically, at the time of Garza's conviction and sentencing (prior to *Blakely*), the Fifth Circuit's understanding of the "statutory maximum" under *Apprendi* was clearly the statutory maximum under the United States Code for the offense, not the maximum set forth in the applicable guideline range. *United States v. Pineiro*, 377 F.3d 464, 467 (5th

---

[13] Garza was sentenced in October 9, 2003, prior to *certiorari* being granted on *Blakely* on October 20, 2003.

Cir.2004) [(*overruled in light of Booker*)] (prior to *Blakely*, it was "long-entrenched circuit precedent" that *Apprendi* is inapplicable where post-verdict judicial findings of fact increased a defendant's sentence substantially, so long as the resulting sentence does not exceed the statutory maximum set forth in the United States Code). *See also United States v. Cooper*, 274 F.3d 320, 243 (5th Cir.2001) ( "Error under *Apprendi* requires reversal only if a defendant's sentence exceeds the statutory maximum."). Under that understanding, an *Apprendi* violation occurs only where a defendant was sentenced to greater than the statutory maximum based on facts not alleged in the indictment nor pleaded to.

*Id.* Therefore, concluded the court, because Garza's sentence was within the statutory maximum, *Apprendi* was not violated and any objection on such ground would have been meritless and, therefore, Garza's counsel was not ineffective.[14] *Id.* at *7; *see also United States v. Richmond*, 2007 WL 2284543, *2 (E.D.La. 2007) (rejecting petitioner's claim that his counsel was ineffective in failing to object to his sentencing enhancements pursuant to *Apprendi* and *Blakely* when neither *Blakely* nor *Booker* had been decided yet and noting that "even after *Blakely* . . . the U.S. Fifth Circuit, in *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004), held that *Blakely* had no application to the Federal Sentencing Guidelines."); *U.S. v. Facen*, 2007 WL 2156584, *4 (W.D.La. July 24, 2007) ("Defense counsel could not be considered ineffective for failing to anticipate the implications of *Blakely* or foresee *Booker*."); *Dubose v. United States*, 2007 WL 57090, *2 (11th Cir. 2007) (rejecting petitioner's argument that it was ineffective assistance of counsel for his attorney to fail to object based on *Apprendi* when *Booker* had not yet been decided because at the time of sentencing it was settled in the circuit that *Apprendi* did not apply to the federal sentencing guidelines); *United States v. Cornelius Fields*, 162 Fed.Appx. 799, *1 (10th Cir. 2006) (finding that counsel's failure to "extrapolate the holding in *Booker* from

---

[14] The court later concluded that, for these same reasons, Garza's claim that his counsel was ineffective for failing to object on *Booker* grounds at sentencing so as to prevent the Fifth Circuit from applying on a plain error standard of review was without merit. *Id.* at *7.

*Apprendi*" was not objectively unreasonable given five-year time period between the two decisions and the fact that there was precedent in the circuit holding that *Apprendi* did not apply to the federal sentencing guidelines); *Fuller v. United States*, 398 F.3d 644, 651 (7th Cir. 2005) ("Fuller does not argue that his trial counsel was ineffective for failing to anticipate *Blakely* . . . and *Booker* . . ., and object on Sixth Amendment grounds to the trial court's imposition of sentencing enhancements. Indeed, 'no such argument would be tenable.'"); *Campbell v. United States*, 108 Fed.Appx. 1, 4 (1st Cir. 2004) ("counsel's failure to anticipate *Blakely* would not constitute unreasonable performance under *Strickland* " due to established precedent).

Considering the foregoing authority, the undersigned finds that Nation's attorney's failure to object to his sentence enhancements in anticipation of the decisions in *Blakely* and *Booker* is without merit. At the time Nation was sentenced, neither *Blakely* nor *Booker* had been decided, and the Fifth Circuit had held that "[t]he decision in *Apprendi* was specifically limited to facts which increase the penalty beyond the statutory maximum, and does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines." *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000) (citation omitted); *see also United States v. McWaine*, 290 F.3d 269, 274 (5th Cir. 2002); *United States v. Floyd*, 343 F.3d 363, 372 (5th Cir. 2003); *United States v. Johnson*, 86 Fed.Appx. 728, 729 (5th Cir. 2004). Moreover, although the Supreme Court had granted *certiorari* in *Blakely* at the time Nation was sentenced, even after the *Blakely* decision was handed down the Fifth Circuit found that the federal sentencing guidelines did not "establish maximum sentences for *Apprendi* purposes."[15] *Pineir*o, 377 F.3d at 473.

_____

[15] The court noted that *Blakely* cast doubt on the constitutionality of enhancements based on judge-found facts under a mandatory guidelines scheme and that "[t]he Supreme Court might later decide that *Blakely* is broad enough to sweep away any distinction between the federal Guidelines

In this case, the statutory maximum for the charge to which Nation pled guilty was forty years imprisonment. 21 U.S.C. §841(b)(1)(B). Nation was sentenced to 235 months imprisonment, which is approximately twenty years. Therefore, although Nation's sentence was enhanced based on judge-found facts under a mandatory guidelines scheme, it was less that the statutory maximum and, as such, there was no *Apprendi* violation. Consequently, Nation's counsel had no grounds for objecting to Nation's sentence on *Apprendi* grounds. In addition, as *Blakely* and *Booker* had not yet been decided, Nation's counsel was under no obligation to object based on the fact that Nation's sentencing range under the federal sentencing guidelines was enhanced based on judge-found facts. As the Fifth Circuit has stated, "counsel is not required to anticipate subsequent developments in the law." *Lucas v. Johnson*, 132 F.3d 1069, 1078-79 (5th Cir. 1998). At the time Nation was sentenced, any objection based on *Apprendi*, *Blakely*, or *Booker* would have been meritless, and counsel cannot be ineffective for failing to raise a meritless claim. *Sones*, 61 F.3d at 415 n.5. Therefore, the undersigned finds that Nation's ineffective assistance of counsel claim in this regard is without merit, and it is recommended that his motion on this ground be DENIED.[16]

_____

and the statutes that the Court addressed in *Apprendi* . . . and *Blakely* . . ." *Id.* at 469, 473. However, the court, relying on the nature of the statutory system at issue in *Blakely* and Supreme Court case law handed down after *Blakely*, concluded that the maximum sentence which could be imposed for a specific offense was set forth in the United States Code and not the federal sentencing guidelines. *Id.* at 473.

[16] Nation also states that, following the Fifth Circuit's denial of his appeal, his attorney did not consult with him concerning the advisability of filing a petition for writ of certiorari with the Supreme Court challenging the Fifth Circuit's application of the plain error standard of review to his *Booker* claim. It is somewhat unclear whether Nation intends this to be the basis for a claim of ineffective assistance of counsel; however, to the extent that he does so intend, the claim is without merit. Review by the Supreme Court is discretionary and, therefore, does not carry with it the right to counsel. *Clark v. Johnson*, 227 F.3d 273, 283 (5th Cir. 2000). Therefore, Nation "'cannot claim

### III. Was Nation's counsel ineffective in advising Nation that he would receive a ten-year sentence if he pled guilty and in failing to inform him of his sentencing exposure?

Nation contends that his counsel rendered ineffective assistance when he told him that he would receive a sentence of approximately ten years if he pled guilty and in failing to inform him of the possible sentence that he faced under the sentencing guidelines, including the possibility that the aforementioned gun and organizer/leadership enhancements would increase his sentencing range. An evidentiary hearing was held regarding this claim, during which the following evidence was adduced.

Nation's counsel, Charles Jones, testified that he enrolled in or around December 2002 and that he represented Nation through his guilty plea and sentencing. Jones stated that he met with Nation on several occasions in the time period leading up to his scheduled trial regarding the Government's evidence against him and whether or not he should plead guilty or go to trial. According to Jones, he met with Nation on approximately August 13th or 14th of 2003, three or four days before Nation's trial was scheduled to begin on August 18, 2003, at which time he went over the federal sentencing guidelines with Nation as well as discussed with him his potential

---

that counsel's error deprived him of a proceeding for which no right to counsel exists.'" *Bonugli v. United States*, 2007 WL 2330295, *4 (S.D.Tex. 2007); *see also Clark*, 227 F.3d at 283 (noting that "a Texas court has held that because there is no right to counsel for a discretionary review, the appellate counsel has no duty to even advise the appellant about the merits of the review" in rejecting defendant's argument that he was denied the right to counsel in preparing a writ of certiorari to the Supreme Court) (citation omitted). Moreover, even assuming *arguendo* that Nation's counsel's performance in failing to consult with Nation regarding the advisability of filing a petition for certiorari with the Supreme Court was deficient, Nation still must show that he was prejudiced in some way by such failure. In order to do so, Nation would presumably have to demonstrate that his attorney should and would have advised him to seek a writ of certiorari, that he would have done so, and that the Supreme Court would have found that the Fifth Circuit erred in applying the plain error standard of review to his *Booker* claim. Nation has made no such demonstration.

sentencing exposure based on how Jones thought the sentencing guidelines would apply to Nation. Jones stated that prior to the meeting with Nation, he had met with the Assistant United States Attorney (AUSA) and that he had recommended a plea between five and forty five years.

Jones testified that following the meeting, he wrote Nation a letter informing him that the AUSA had recommended a plea to five to forty five years and that his offense level exposed him to a possible sentence of 121 to 151 months providing he pled guilty. The letter further stated that if Nation went to trial, he would not receive credit for accepting responsibility, he would face an increased sentence due to relevant conduct testified to by the Government's witnesses, and that if he was convicted, he would be facing a life sentence. In the letter, Jones recommended that Nation plead guilty to five to forty-five years and stated that the AUSA had agreed not to object to Nation receiving the lowest sentence within the applicable range. The letter concludes, "Basically, you must decide between a possible **10-13** year sentence or a definite life sentence, if convicted."[17] (Defense Ex. 1).

Jones also testified regarding a document from his file entitled "Notes," which sets out the dates and quantities of drugs attributed to Nation by either direct sales or relevant conduct. The documents states that a plea would take two points off of Nation's offense level and that three points would be added upon conviction, followed by "121-151 months (10-13 years)." Under the

---

[17] The letter was admitted into evidence. Jones testified that the letter was recovered from his files. The date on the letter is August 15, 2002; however, Jones testified that this was a typographical error and that it should state August 15, 2003. Another version of the letter was also admitted into evidence; it was substantially the same as the first letter except that it contained some handwritten grammatical edits and someone had handwritten a zero over the five to reflect a plea to five to forty years rather five to forty five years. Someone had also inserted the term "range" in order to state that Nation's offense level exposed to a possible sentence range of 121 to 151 months if he pled guilty. (Defense Ex. 2). The Government notes that is some indication that a final letter may not have been sent given that there is no letter reflecting the corrections.

hearing "Recommend to Lee Dell Nation," the documents states "Plead guilty" and then "gun charge will not be filed," "will ask the judge to keep sentencing at the bottom of the range," "U.S. Attorney will not object to keeping the sentence at the bottom of the range." It then states, "If Lee Dell goes to trial and he is convicted there is definitely a **life sentence**." Finally, there is a handwritten notation, dated August 14, 2003, at the bottom of the document stating that Jones met with Nation and explained to him that if was convicted he would get a life sentence and that Nation stated that he wanted to go to trial. (Defense Ex. 3).

Jones testified that he arrived at the 121-151 month sentencing range by taking into account all of the quantities of drugs that could be imputed to Nation either by direct sale or relevant conduct and subtracting two points for acceptance of responsibility, which resulted in a base offense level of 34. According to Jones, because the AUSA had agreed not to object to a sentence at the lowest end of the range, 121 months would have resulted in a ten-year sentence. Jones stated that his computation did not account for any other enhancement based on other relevant or conduct or the gun. He stated that he did not believe that Nation's sentence would be enhanced based on the gun because the gun was in his truck while Nation was in his house at the time of his arrest; therefore, the gun would not be imputed to Nation because of the spacial proximity issue. However, Jones testified that although the possibility of an enhancement based on the gun was not included the aforementioned documents, he did discuss the possibility of such an enhancement with Nation. He stated that he had done a great deal of research[18] before Nation pled guilty regarding the issue which led him to conclude that because of the lack of spacial proximity of the gun and the fact that Nation did not have actual control of it, it should not have

---

[18] Jones stated that some of his research was in Nation's favor and some of it was not.

been imputed to him.  Jones also stated that he discussed the possibility of the organizer/leader enhancement and whether the FBI notes that he had received indicated that Nation was a leader.

Jones testified that he told Nation that if the leadership or gun issue was not resolved in his favor then his base offense level under the guidelines would be increased, and that if that were to happen, the base offense level would not be 34 but rather a 38 or 40.  However, Jones would not confirm that he went over the provisions of the sentencing guidelines in this type of detail with Nation before his guilty plea, but he did state that he informed Nation that if he was considered to be leader or if the gun was imputed to him, his sentence would increase.  He stated that Nation indicated to him that he was not a leader, and that both he and Nation agreed that neither enhancement should have applied to Nation.  Jones testified that he went through the research regarding what was necessary in order for an individual to be characterized as a leader, including the factors to be considered in making such a determination.  According to Jones, Nation informed him that none of these factors applied to him.

When asked whether Nation understood that there was a possibility that he could get a 235 month sentence if he pled guilty, Jones stated he believed that Nation knew the possibility of getting an enhanced sentence if the gun was imputed to him or he was determined to be a leader.  According to Jones, Nation "obviously . . . understood that Judge James would ultimately make the decision of what he received."  He stated that his purpose in writing the aforementioned letter to Nation was to inform him of the accurate way of computing his sentence exposure as he viewed it and to let him know that if he were convicted, his sentence would be substantially increased.  However, Jones agreed that he indicated to Nation that his choice was between a

possible ten-year sentence and a definite life sentence.[19]

Jones stated that he researched the issues regarding the organizer/leader and gun enhancements before Nation's guilty plea and after it but prior to his sentencing. He stated, however, that he did not prepare a memorandum reflecting this research to be kept in his file nor did he share his research in written form with Nation, although he did discuss the research with him. Jones's file contained numerous documents containing research regarding the organizer/leader and gun enhancements.[20] See Defense Ex. 6 and 7. Three of these documents contain a date/time stamp stating "Dec-16-2003 10:31"[21] and "4th Circuit Judge Love." Jones could not say whether these documents were produced before he met with Nation on August 14, 2003, and recommended that he plead guilty or before the sentencing; he stated that his research

---

[19] Jones stated that he did not mean a life sentence literally; rather, he and Nation had discussed that if a fifty-year-old man, as Nation was, received a thirty year sentence, it would be tantamount to a life sentence.

[20] One of the documents recites the section from the sentencing guidelines regarding the organizer/leader enhancement and contains a paragraph setting forth the factors for determining whether an individual is an organizer or leader and a case summary of a case from the Seventh Circuit regarding the organizer/leader enhancement. There was another copy of this document containing a handwritten notation stating "Leadership - There were no meetings." Jones stated that the reason he wrote this was because one of the cases he read stood for the proposition that in order to be considered a leader the individual would have to have conducted meetings. The document was found in Jones's file under "Research/Notes" between the aforementioned August 14th notation and a document entitled "Nations To Do List." See Government Ex. 1. Jones stated that the two documents were not put into his file at the same time and that the order in which they were placed in the file indicated that the one with the handwritten note was probably prepared when he was discussing the possibility of a guilty plea with Nation.
Jones's file also contained a document containing his objections to the pre-sentence investigation report which contained a notation stating that the Government's main witness stated that the Nations were not a gang and there was no gang leader. Following this document was a document, produced after the pre-sentence investigation report, listing the factors to be considered when determining if an individual is an organizer or leader and why none of these factors led to the conclusion that Nation was an organizer or leader.

[21] This was after Nation pled guilty on August 18, 2003.

was not done all in one day, but was done both before and after the plea.

Jones testified that one the day of the guilty plea he explained to Nation what was going to happen during the plea. He further stated that after the sentencing, he never received any letters or calls from Nation stating that he would not have pled guilty if he had known that he was going to get a 235-month sentence as opposed to a 121-month sentence. He stated that Nation sent him a letter on July 20, 2004, regarding *Blakely* and its application to his case. See Government Ex. 3. The letter does not contain any reference to Nation being dissatisfied with Jones's representation or the claim that he would not have pled guilty if he had known that he could get a 235-month sentence. Jones stated that after he received the pre-sentence investigation report, he went through it with Nation and told him that he was going to file objections to the organizer/leader and gun enhancements. According to Jones, although Nation was understandably displeased with his sentence, he never asked Jones to file a motion to withdraw his guilty plea.

Jones stated that he never promised Nation that he would receive a 121-month sentence; rather, he gave him his best prediction of what his sentence would be based on the evidence. Although Jones stated that he did expect Nation to rely on his prediction in pleading guilty, he also stated that he made it clear to Nation that his sentence was ultimately up the judge and that it could not be determined until after the pre-sentence investigation report was prepared.

Nation testified that he recalled meeting with Jones on August 14, 2003. Although he remembered seeing Jones's notes regarding his guilty plea and sentence during the August 14th visit, he stated that he did not receive Jones's August 15, 2003 letter. Nation stated that Jones never discussed the sentencing guidelines in general with him, nor did he ever discuss a sentencing enhancement for a gun or a leadership role. He testified that Jones did, however,

discuss the crack cocaine and the relevant conduct with him, and they did have some discussion about the sentencing guidelines.

According to Nation, Jones advised him that he might receive a ten-year sentence if he pled guilty, but he did not tell him anything about a range of 121-151 months and he did not show him a sentencing table. Nation stated that he had access to a copy of the sentencing table when he was housed at the West Monroe city jail prior to his guilty plea, but he did not have access to all of the sentencing guidelines. He testified that he did not know prior to his sentencing that his sentence was going to be enhanced based on him being a leader. According to Nation, Jones never reviewed the pre-sentence investigation report with him and never sent him a copy of it. He stated that he expected his sentence to be 121 months when he arrived on the day of the guilty plea.

Nation testified that during the plea agreement, he did not really know what the five-to-forty-year range meant, but he understood that the plea agreement stated that there was a sentencing range of five to forty years. He also recalled Judge James telling him about the five to forty year range. However, Nation stated that the five to forty year range did not make sense to him because he was still thinking that he was going to get ten years because that is what Jones told him. He stated that he did not ask to withdraw his guilty plea because he was so upset and devastated about the sentence he received. According to Nation, Jones continued to tell him from 2004 to 2006 that he was going to attempt to get his sentence reduced.

When asked why he did not tell the judge that Jones had told him that he was going to be sentenced to ten years in response to the question of whether anyone had made any prediction, promise, or prophecy as to his sentence, Nation said he should have but he still thought he was going to receive ten years. Nation stated that he would not have pled guilty had he known that

his sentence was going to be 235 months because "[t]hat ain't what he promised me. He didn't promise me. He told me that I was going to get ten years." He stated that he would not have pled guilty because 235 months was too much time.

Nation acknowledged that he signed the plea agreement which stated that he understood that a final determination of the applicable guideline range could not be made until the completion of the pre-sentence investigation report and that his sentence was within the discretion of the Court. He also acknowledged that the plea agreement stated that the maximum punishment he could receive was not less than five years and not more than forty years. He testified that, regardless of what Jones may have told him, he knew that he could not get a sentence of less than five years or more than forty years when he pled guilty.[22] Nation stated that he only had approximately five to ten minutes to review the plea agreement on the morning of his guilty plea and that, in fact, he did not read it and never saw it until the day of the evidentiary hearing; rather, Jones read it to him.

Nation also acknowledged that he answered "yes" when the judge asked him (1) whether he and his attorney had talked about the maximum possible sentence for this offense; (2) whether he understood that the maximum possible penalty for the offense was not less than five years nor more than forty years; (3) whether he and his attorney had talked about how the sentencing guidelines might apply to his case; and (4) whether he understood that the Court would not be able to determine the guideline range for his case until after the pre-sentence report had been

---

[22] Nation also acknowledged that the plea agreement that he signed stated that (1) his guilty plea was entered into freely, knowingly, and voluntarily, with no threats or coercion after due consultation with counsel; (2) that he understood the nature of the charge against him and the maximum possible penalty; and (3) that his plea was made without threats or inducements from his attorney and that the only reason he was pleading guilty was because he was, in fact, guilty as charged.

completed. He further acknowledge that he answered "no" when the judge asked him (1) whether anyone had made any promises other than those contained in the guilty plea agreement that induced him to plead guilty and (2) whether anyone had made any prediction, prophecy, or promise to him as to what his sentence would be.

Nation's father, Lee Dell Nation Sr., testified that the Nation family hired Jones to represent Lee Dell. He stated that he and some other family members met with Jones one Sunday afternoon and Jones guaranteed that Lee Dell would not get more than ten years if he pled guilty. Nation Sr. did not remember when this meeting took place or whether it took place before the scheduled trial date. He testified that he did not talk to his son after Jones made the guaranty.

Nation contends that his attorney was ineffective in giving erroneous sentencing advice regarding Nation's sentencing exposure and that as a result Nation lacked a full understanding of his sentencing exposure if he pled guilty; therefore, argues Nation, his guilty plea was involuntary. He argues that neither Jones's August 15th letter to Nation nor his typed notes indicate that he discussed with Nation the possibility that his sentence could be enhanced based on the gun and his status as a leader and that it is hard to imagine that Jones would have noted the crack cocaine/relevant conduct issue but not the fact that he discussed the possible enhancements with Nation. Alternatively, Nation asserts that, even if Jones did consider the possibility of the enhancements, he was ineffective in failing to adequately research the issue of the whether the enhancements would apply.

 With regard to the latter issue, the Fifth Circuit has stated that counsel is required to "'research relevant facts and law, and made an informed decision that certain avenues will not be fruitful'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (citation omitted). "Solid,

meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.* Jones testified that he performed a great deal of research regarding these issues and that he discussed this research with Nation. He stated that he went through the factors for determining whether an individual is an organizer or leader and that Nation's answers regarding such factors indicated to him that he should not have been considered a leader. He also stated that he researched the issue regarding the gun enhancement and that based on such research he concluded that because of the lack of spacial proximity between Nation and the gun, the gun should not have been imputed to Nation.

Nation contends that the only research found in Jones's file consisted of four pages of brief case summaries relative to enhancements, three of which appear to have been faxed from 4th Circuit Judge Love's office in December of 2003, after both the guilty plea and the issuance of the PSR.[23] However, the fact that the file did not contain extensive research does not necessarily mean that no research was conducted. Although some of the research contained in Jones's file indicates that it was done after Nation's guilty plea, Jones testified that he researched the enhancement issues prior to Nation's guilty plea and that, based on this research, he did not believe that the enhancements should apply to Nation. The fact that Jones came to the wrong conclusion does not render his assistance ineffective; "the Constitution does not mandate error-free counsel." *Henry v. Wainwright*, 721 F.2d 990, 996 (5th Cir. 1983). In addition, the fact that this Court found that the enhancements applied to Nation, and that the Fifth Circuit affirmed this judgment, does not automatically mean that Jones rendered ineffective assistance of counsel in

---

[23] Nation also notes that only one of the cited cases in the research was from the Fifth Circuit and it supported the application of the gun enhancement to him.

researching the enhancements.[24]  Moreover, with regard to Nation's claim that Jones never

discussed with him the possibility of his sentencing being enhanced based on the gun or his

status as an organizer/leader, the undersigned did not find Nation's testimony in this regard to be

credible.  Rather, although Jones may not have specifically informed Nation of the possibility of

a sentencing range of 235-293 months, the undersigned found Jones's testimony that he informed

Nation that his sentence would be enhanced if he were found to be a leader and if the gun were

imputed to him to be credible.

Regardless, however, of whether Jones rendered ineffective assistance of counsel in

failing to adequately research the enhancement issue and subsequently advising Nation that he

would receive a ten-year sentence, the undersigned finds that Nation has failed to demonstrate

prejudice and therefore is not entitled to relief.  Again, in order to demonstrate ineffective

assistance of counsel in the context of a guilty plea, "the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have ple[d] guilty and would

have insisted on going to trial."  *Hill*, 474 U.S. at 59.  In *United States v. Castillo-Sanchez*, 49

F.3d 728, *4 (5th Cir. 1995) (unpublished), the Fifth Circuit addressed the petitioner's claim that

his guilty plea was involuntary because his attorney rendered ineffective assistance of counsel in

incorrectly advising him that he would receive a forty-month sentence when, in actuality, his

---

[24]  With regard to the weapon enhancement, the undersigned notes that the Fifth Circuit has
stated that "weapon possession is established if the government proves by a preponderance of the
evidence that a temporal and spatial relationship existed between the weapon, the drug trafficking
activity, and the defendant."  *United States v. Caicedo*, 103 F.3d 410, 412 (5th Cir. 1997) (citation
omitted).  The court has further found that in order for the enhancement to apply, the "government
must provide evidence that the weapon was found in the same location where drugs or drug
paraphernalia are stored or where part of the transaction occurred."  *Id.*  In the case at bar, the pre-
sentence investigation report reveals that 84 grams of cocaine base, $16,000, and 44 magnum pistol
were all found in Nation's truck; the money and the drugs were in the tool box and the gun was in
the cab.

sentencing range was fifty-seven to seventy-one months. The court stated that, at the sentencing

hearing, the petitioner had told the judge that he had not received any promises that had induced

him to plead guilty. *Id.* The court then stated:

> To receive federal habeas corpus relief based on alleged promises that are
> inconsistent with representations made in open court when a guilty plea was
> accepted, a prisoner must "'prove (1) exactly what the terms of the alleged promise
> were; (2) exactly when, where, and by whom such a promise was made; and (3) the
> precise identity of an eyewitness to the promise.'" *United States v. Smith*, 915 F.2d
> 959, 963 (5th Cir.1990) (citation omitted). This court also considers the facts
> confronting the defendant at the time that he made the decision to plead guilty, and
> the fundamental fairness of the proceeding. *United States v. Fuller*, 769 F.2d 1095,
> 1098-99 (5th Cir.1985).

*Id.* Based on this authority, the court found that the petitioner had failed to demonstrate that his

attorney's alleged error prejudiced him, stating as follows:

> He alleges his counsel told him to expect to receive a sentence of about forty months,
> but has not shown that there was a witness to his counsel's alleged promise. A
> "prediction" of a certain sentence is not a "promise," and an inaccurate prediction
> does not constitute ineffective assistance. *See United States v. Rivera*, 898 F.2d 442,
> 447 (5th Cir.1990); *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir.1987). As
> noted above, there was substantial evidence against Sanchez. At the rearraignment
> hearing, Sanchez stated that he understood the maximum penalty for the charge and
> that the guideline sentence could not be determined until after a PSR was developed.
> He stated that he had had ample opportunity to discuss the case with his attorney and
> was satisfied with his attorney's representation. Sanchez also conceded that he had
> not received any promises of any kind to persuade him to enter a guilty plea.

*Id.*

Therefore, the court concluded that "[u]nder the circumstances, even if Sanchez's

allegations are accepted as true, he has not shown that but for his counsel's alleged error he

would not have pleaded guilty and would have insisted on going to trial." *Id. See also United*

*States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) ("[R]eliance on the erroneous advice of

counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or

involuntary. 'As long as the defendant understood the length of time he might possibly receive,

he was fully aware of his plea's consequences.'  The court informed Santa Lucia during his

Fed.R.Crim.P. 11 allocution that a guilty plea would expose him to a mandatory minimum

sentence of 20 years and a maximum of life imprisonment, a fine of $2 million, and supervised

release.  No more was required to inform Santa Lucia of his sentencing exposure."); *United*

*States v. Gracia*, 983 F.2d 625, 629 (5th Cir. 1993) (misinformation from defense counsel

regarding the likely period of incarceration is not sufficient basis to invalidate guilty plea when

the trial court adequately advised the defendant of the possible maximum penalty he was facing);

*United States v. Smith*, 143 F.App'x 559 (5th Cir.2005) (unpublished) ("Smith ... asserts that if

counsel had informed him that the government was seeking to enhance his sentence as a career

offender, he would not have pleaded guilty. As long as the defendant understood the length of

time he might possibly receive, however, he was aware of the plea's consequences."); *Paniagua*

*v. United States*, 2008 WL 3884396, *3 (rejecting petitioner's argument that he only pled guilty

because his attorney advised him that he would receive a sentence of 96-120 months because the

sentencing judge advised the petitioner of the maximum possible penalty at the sentencing

hearing and because the petitioner's signature on the plea agreement and answers at the guilty

plea hearing indicated that his guilty plea was not the result of any promises, that the petitioner

knew the maximum possible penalty, and that he knew that the judge was not bound by counsel's

prediction of what his sentence would be); *United States v. Register*, 2008 WL 1766981, *1-2

(W.D.La. March 4, 2008) (rejecting petitioner's claim that his counsel was ineffective in failing

to inform him of the applicability of the career offender enhancement prior to his guilty plea

because the court had advised petitioner at sentencing of the possible maximum penalty); *Stinnett*

*v. United States*, 2007 WL 2375765, *2 (N.D.Tex. August 16, 2007) (rejecting petitioner's claim

that his guilty plea was unknowing and involuntary because his counsel did not inform him that

his sentence would receive a two-level firearm enhancement on the ground that petitioner was informed of the maximum prison term for the offense with which he was charged).

In the case *sub judice*, the plea agreement which Nation signed stated that the maximum penalty for the crime to which he was pleading guilty was not less than five years and not more than forty years and that a final determination of the applicable guidelines range could not be made until the completion of the pre-sentence investigation report. Moreover, at the sentencing hearing Nation was again informed of the maximum possible penalty, and Nation also stated that (1) he and his attorney had discussed the maximum possible penalty; (2) no one had made any promises other than those contained in the plea agreement that induced him to plead guilty; (3) he and his attorney had discussed the sentencing guidelines; (4) he understood that his guideline sentence could not be determined until the pre-sentence investigation report was complete; (5) that if the sentence was more severe than expected he would still be bound by his plea; and (6) that no one had made any prediction, prophecy, or promise to him as to what his sentence would be. As noted above, "[s]worn statements in open court during a plea hearing 'carry a strong presumption of verity.'" *Paniagua* at *6 (quoting *United States v. Martinez-Molina*, 64 F.3d 719, 733 (5th Cir. 1995). "Further, documents signed by the defendant at the time of the guilty plea are entitled to 'great evidentiary weight.'" *Id.* (quoting *U.S. v. Abreo*, 30 F.3d 29 (5th Cir.1994).

To the extent that Nation claims that Jones promised him that he would receive a ten-year sentence if he pled guilty,[25] Nation may overcome his sworn representations by demonstrating 1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise. *Castillo-*

---

[25] The undersigned notes that Nation never explicitly stated during the evidentiary hearing that Jones promised or guaranteed that he would receive a ten-year sentence.

*Sanchez*, 49 F.3d at *4. However, assuming that Nation has established the terms of the promise and when, where, and by whom it was made, he has not demonstrated that there was an eye witness to Jones's alleged promise. Jones testified that he did not promise Nation that he would receive a ten-year sentence if he pled guilty, and the undersigned found this testimony to be credible. Moreover, although Lee Dell Nation Sr. testified that Jones guaranteed to him and other family members that Nation would not get more than ten years if he pled guilty, there is no indication that Nation Jr. was present when this alleged guarantee was made, and Nation Sr. testified that he did not talk to Nation Jr. following the alleged guarantee.

While it is clear in this case that Jones predicted that Nation would receive a ten-year sentence, and that this prediction was inaccurate, a "'prediction' of a certain sentence is not a 'promise,' and an inaccurate prediction does not constitute ineffective assistance." *Id.* As discussed above, the district court informed Nation of the maximum possible sentence. Nation indicated that he understood the possible penalty, and the sentence he ultimately received did not exceed the maximum allowable.[26] Therefore, Nation's plea was knowing and voluntary and his

---

[26] Nation relies on *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004), in which the court stated as follows:

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by Strickland. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

(citations omitted). In *Grammas*, the defendant's attorney incorrectly advised him that he would be sentenced to six to twelve months imprisonment at the most if he went to trial and was convicted; the attorney used the wrong set of sentencing guidelines in computing the defendant's sentencing exposure and failed to realize that the defendant' prior convictions were crimes of violence. *Id.* at 436-7. The court found that the defendant's attorney had

ineffective assistance of counsel claims fails.  Accordingly, it is recommended that Nation's

motion on this ground be DENIED.

### III. Was the evidence insufficient to show that Nation was an organizer and/or played a leadership role such that his sentence could be enhanced on such ground?

Nation contends that the evidence did not support the finding that he was an organizer

and or played a leadership role and, therefore, that his sentence should not have been enhanced

---

rendered ineffective assistance of counsel and remanded the case to the district court to determine whether the defendant was prejudiced. *Id.* at 437-39.  *Grammas*, however, is distinguishable from the case *sub judice* in that it  "'involved allegations that counsel misadvised the defendants of the maximum sentence he faced if he went to trial' and because the 'misadvice' in th[at] cas[e] 'was not merely an estimation or prediction of sentence but, instead, was a definitive statement as to the maximum exposure each defendant faced at trial.'"  *United States v. Casey*, 2007 WL 2706269, *5 (N.D.Tex. September 17, 2007). When, as here, the "case involves involves a guilty plea, the Court has the opportunity to correct any misinformation regarding sentencing exposure when it conducts the plea colloquy." *Id.*

This case is also distinguishable from *United States v. [Kerry]Nation*, 2007 WL 4812283, in which this Court held that Nation's attorney was ineffective in advising him that he would not be subject to the career offender enhancement when in fact he was subject to it.  In that case, Nation's attorney had, admittedly without doing any research on the issue, advised Nation that he would not be subject to the career offender enhancement, and the AUSA had expressed the same opinion *Id.* at *3.  Moreover, the evidence revealed that the applicability of the career offender enhancement was the sticking point in the plea negotiations, and Nation's attorney and Nation himself testified that the reason Nation did not want to plead guilty was because of the possibility of the enhancement.  *Id.* at *4. Finally, six weeks after he pled guilty and shortly after he saw the pre-sentence investigation report, Nation filed a motion to withdraw his guilty plea.   *Id.*  However, similar circumstances are not present in the case at bar.  Although Nation apparently had indicated that he wanted to go to trial up until shortly before he decided to plead guilty, there is no indication that the applicability of the of the gun or organizer/leader enhancements was a factor in his desire not to plead guilty.  Moreover, Nation never filed a motion to withdraw his guilty plea, and he did not even raise the issue regarding Jones's failure to advise him of the enhancements in his original *pro se* §2255 motion; rather, the claim was raised for the first time in Nation's amended §2255 motion filed after the Fifth Circuit had remanded Kerry Nation's ineffective assistance claim for an evidentiary hearing on the grounds that a reasonable jurist could conclude that he would not have pled guilty if his lawyer had not told him that the career offender enhancement would not apply to him.  *See United States v. Nation*, 229 Fed.Appx. 288, 290 (5th Cir. 2007).

based on this finding.  However, Nation raised this argument on direct appeal, and the Fifth Circuit found that there was sufficient evidence supporting the organizer/leader enhancement and the gun enhancement.[27]  Therefore, as this argument was raised and disposed of on direct appeal, it is not subject to further review under §2255.  *See Segler*, 37 F.3d at 1134.   Accordingly, it is recommended that Nation's motion on this ground be DENIED.[28]

## CONCLUSION

For the reasons stated above, it is recommended that the defendant's motion be **DENIED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[27] With regard to the organizer/leader enhancement, the Fifth Circuit noted that two witnesses told Agent Deal that Nation and Marilyn Nation received powder cocaine from Dallas, cooked it, and distributed it to other Nation family members for distribution.  With regard to weapon enhancement, the court noted that the pre-sentence investigation report determined that a gun was found in Nation's truck along with $16,000 cash and 84 grams of crack cocaine and that Agent Deal testified that weapons were found in Nation's house.

[28] In an earlier §2255 motion filed by Jones, Nation argued that he should have had two points subtracted from his base offense level for acceptance of responsibility; however, as it is clear that Nation did in fact receive the two point reduction for acceptance of responsibility, his claim in this regard is without merit.  Nation also argues that the federal sentencing guidelines regarding crack cocaine are unconstitutional as applied to him.  This claim, however, will be considered by the district judge.

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE
SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,
FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL
FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 9th day of October, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE